## HOWELL *et al. v.* ROME GROCERY COMPANY.

An equitable petition which with the amendments thereto made directly conflicting allegations as to the most essential facts upon which it was based; which set forth inconsistent causes of action; which as to one party prayed for relief totally unauthorized by its most material averments; which was vague and indefinite in many of its allegations; and which as a whole at best made a case for relief against one party alone, and unnecessarily joined with that party other defendants, was rightly dismissed on demurrers raising the proper objections to the petition and the amendments, and to the petition as amended.

Argued June 26, — Decided August 5, 1897.

Equitable petition. Before Judge Henry. Floyd superior court. July term, 1896.

John W. Howell and others (alleging that they, with J. S., Catherine H., and W. S. Howell, are the heirs at law of Williamson C. Howell deceased) brought their action against the Rome Grocery Company, the Georgia Loan and Trust Company, W. P. Simpson, and J. S., Catherine H., and W. S. Howell. Attached to the petition are the following instruments: Deed from Williamson C. Howell to the Georgia Loan and Trust Company, dated July 2, 1888, conveying 960 acres of land in Floyd county, as security for a debt represented by five promissory notes of $1,000 each, due five years thereafter, with semiannual interest notes, and stipulating that in default of payment of interest or of taxes and insurance upon the property the principal debt should become due at the option of the holder, and conferring upon the trust company a power of sale of the property after certain advertisement, with power to make good and sufficient title to the purchaser at such sale, thereby. divesting out of the maker of the deed all right and equity that he may have to the property and vesting the same in the purchaser, and to apply the proceeds of the sale, first, to the payment of the debt with interest, the remainder, if any, to be paid to said maker. On April 23, 1894, the trust company made a deed conveying said property to W. Smith Howell by virtue of the power of sale contained in the deed first described, reciting default in the payment of the principal notes when due, also legal advertisement and public sale to the highest bidder for $5,835, the excess of $5,000 going to the payment of interest, expenses of advertisement, attorney's fees, tax fi. fas. and liens against W. C. Howell. On May 1, 1894, W. Smith Howell executed a deed conveying portions of the property to W. P. Simpson as security for a debt of $1,200 with interest, due May 1, 1895; this deed also containing a power of sale in default of payment of the debt. On July 10, 1894, W. S. Howell executed a conveyance to the Rome Grocery Company, reciting the making of the deed to Simpson and the making of a bond by Simpson to reconvey the land on payment of the loan, and conveying the property embraced in said deed, together with a large amount of personalty, consisting of farming-implements, stock and produce, unto the

Rome Grocery Company in consideration of $3,500 and of an agreement of that company to pay and discharge the loan made by Simpson. On May 22, 1895, Simpson made to the Rome Grocery Company a deed conveying the land embraced in the security-deed to him, reciting payment by that company of the $1,200 loaned by him to W. S. Howell, and referred to in the two deeds last described.

The petition alleges, that W. C. Howell died on November 28, 1891, seized and possessed of a large estate of realty and personalty; that J. S. and Catherine H. Howell qualified as his executors and entered into possession of the 960 acres of land first mentioned, and so remained until about May 3, 1894; that W. S. Howell is a citizen of Texas and can not be served with process; that the Rome Grocery Company took possession of the land sought to be conveyed to it by Simpson and W. S. Howell, and still so remains, refusing to deliver possession to said administrators or to petitioners, or to pay the rents and profits thereof; that the recital in the deed from the trust company to W. S. Howell that the property was sold to him as the highest bidder is untrue, but in fact the trust company bid off the property for itself in its own name and by its agents and attorneys, and the same was not sold to W. S. Howell, and while the deed purports to be a conveyance to W. S. Howell, plaintiffs charge that it was not executed by the trust company to him, but when it was signed by the trust company the grantees named therein were J. Sam Howell and W. Smith Howell, and the instrument being so executed was forwarded to the attorneys of the trust company at Rome, to be by them delivered to the grantees, but said attorneys erased the name of J. Sam Howell and left the name of W. Smith Howell as the only grantee, and the deed was never resigned and rewitnessed in its altered condition, and was not delivered to W. Smith Howell in the presence of attesting witnesses; that these facts were well known to the agents and officers of the Rome Grocery Company at the time of and after said transactions and before it had acquired any rights thereunder; that the instrument executed by W. S. Howell to Simpson was made to secure a usurious debt, Simpson advancing $1,200 as

set forth in said instrument, with eight per cent. interest thereon from date; that at the same time, and as a part of the same transaction, Howell executed to Simpson a note for $68.00 secured by a mortgage on personalty, given in consideration solely that Simpson would make the loan of $1,200; and these facts also were known to the grocery company through its officers and agents. Plaintiffs further allege, that prior to April, 1894, said administrators represented to plaintiffs that it would be necessary to bring the 960 acres of land to sale for the purpose of paying off the loan to the trust company, that they would cause sale to be made either at administrator's sale or by virtue of the power of sale in the deed to the trust company, and that after paying said indebtedness the balance of the land or surplus of the purchase-price would be administered as a part of the estate of W. C. Howell. Plaintiffs accepted these representations as true, and relied upon the administrators to carry them into execution. They were never advised and never knew that any contrary transaction had been made until after the execution of the instrument by the trust company to W. S. Howell. After this they heard indirectly that the grocery company had entered into or was about to enter into a transaction with W. S. Howell, whereby that company was to obtain title to portions of the land; whereupon plaintiffs promptly advised the officers and agents of said company that such a transaction would be fraudulent and void, and notified it not to pay to W. S. Howell the consideration proposed for such transaction, which notice was given prior to the payment of such consideration by said company to Howell, if any was paid. The rest of the land other than that conveyed to Howell by the trust company has been sold through the instrumentality of the trust company with the advice and consent of the administrators, and by W. S. Howell; the lands so sold were of equal or greater value than the loan secured by the deed to the trust company; and whether the proceeds have been applied to the payment of said loan plaintiffs are not advised, but charge that until said lands or the proceeds thereof have been duly accounted for to the plaintiffs or to the estate of W. C. Howell, none of the defendants

should be allowed to claim any advantage, lien, or interest in the lands described in the deeds from Howell to Simpson, and from them to the grocery company, by reason of the fact that the lands so conveyed were previously conveyed as security for the debt to the trust company; but that said portions should be held and declared free from any lien or encumbrance by the deed to the trust company. The administrators have colluded with the trust company, W. S. Howell and the grocery company to bring about the condition of affairs herein set forth. They are unwilling to collect the assets of the estate of W. C. Howell against the grocery company or the, trust company, and have refused so to do upon application to them by plaintiffs. They consent to the bringing of this petition. Catherine H. Howell took dower as the widow of W. C. Howell. The prayer is, that the deeds other than that from W. C. Howell to the trust company be cancelled; that plaintiffs be declared to have title to an undivided four-sixths interest in the portions of the land embraced in the last three deeds, and possession be given of the same; that the grocery company pay plaintiffs four sixths of the rents and profits of said portions; that in the event the grocery company be held an innocent purchaser for value, the trust company be ordered to pay plaintiffs four sixths of the value and rents of the portions covered by the last three deeds; and that general relief be granted.

By amendment plaintiffs alleged, that after paying the debt due by W. C. Howell to the trust company by the sale of a part of the property conveyed by the deed of said company to him and by money arising from the sale of the personal property belonging to W. C. Howell, there remained in the hands of W. S. Howell 228 acres of land, constituting the portions conveyed by the last three deeds, which in equity belonged to the estate of W. C. Howell or his heirs, and W. S. Howell held the same for their use and benefit, which fact was known by the grocery company at the time of its purchase from W. S. Howell. Further, that at the time of the sale by the trust company there was an agreement between the plaintiffs and the administrators, whereby the property was to be purchased by W. S. Howell or some other person for the benefit

of the heirs of W. C. Howell, and that said property or its proceeds should be applied, first, to the payment of the indebtedness due to the trust company, and the surplus, whether in money or property, should be distributed to the heirs of W. C. Howell, and administered as a part of his estate; and when W. S. Howell became the purchaser at said sale he acted as the agent of the estate and of the heirs. This agreement was known to the grocery company, its agents and officers, at and before the date of its purchase from W. S. Howell, and said company, well knowing that Howell acted in the capacity of agent, and that the property was in fact that of the heirs of the estate of W. C. Howell, nevertheless attempted to purchase it, and aided and abetted and colluded with W. S. Howell, and appropriated the money to his own uses by applying the proceeds thereof to the payment of a debt due by W. S. Howell to the grocery company, which debt had been previously contracted, said company knowing at the time that Howell was insolvent, and it was but a scheme on the part of the company to collect a debt out of him at the expense of the estate of W. C. Howell.

Demurrers to the petition were filed severally by the administrators and by each of the companies named. At the hearing the court ordered that each and all of the demurrers and the several grounds thereof be sustained, and that the petition be dismissed; the order reciting that it appears that no relief is prayed against W. P. Simpson and no right thereto alleged, and that W. S. Howell has not been served with process. To this judgment the plaintiffs excepted. The grounds of the demurrers were, in brief, misjoinder of parties and of causes of action; multifariousness; want of a cause of action alleged against the demurring defendants; repugnancy of the prayers of the petition; inconsistent allegations; estoppel by ratification by plaintiffs of part of the transaction attacked; laches of plaintiffs; insufficiency of allegations of fraud; want of equity in the petition; the statute of frauds as to the agreement pleaded; and want of specific allegations as to what personal property of the estate of W. C. Howell was sold and the amount of the money raised thereby.

*Dean & Dean*, for plaintiffs.

*Fouche & Fouche* and *Hoskinson & Harris*, for defendants.

COBB, J.   The petition and the amendments thereto, as well the demurrers filed by the various parties defendant, are set forth in substance in the official report.   When these are read in connection with the headnote, it will clearly appear that the judgment of the trial court in dismissing the case was proper and should be     *Affirmed.   All the Justices concurring.*